**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Yeremey Krivoshey (State Bar No. 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
          ykrivoshey@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERISH DAVERSA-EVDYRIADIS, on behalf of herself and all others similarly situated,<br><br>                              Plaintiff,<br><br>        v.<br><br>NORWEGIAN AIR SHUTTLE ASA and KIWI.COM, INC. d/b/a KIWI.COM USA, INC.<br><br>                              Defendants. | Case No.  5:20-cv-767<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

1    Plaintiff Cherish Daversa-Evdyriadis ("Plaintiff"), individually and on behalf

2  of all others similarly situated, alleges the following on the investigation of her

3  counsel and upon information and belief, except as to Plaintiff's allegations

4  regarding her own actions which are based on personal knowledge.

5    **NATURE OF THE ACTION AND FACTS COMMON TO ALL CLAIMS**

6    1.    This is a class action lawsuit regarding Defendants Norwegian Air

7  Shuttle ASA ("Norwegian") and Kiwi.com's ("Kiwi") (collectively, "Defendants")

8  failure to provide full refunds to customers whose flights were cancelled as a result

9  of the coronavirus, or COVID-19.

10    2.    Given the outbreak of the coronavirus, Defendants have cancelled a vast

11  percentage of their international and United States flights.  However, Defendants

12  have, to date, refused to issue refunds for flights that Defendants cancelled.

13    3.    The United States Department of Transportation ("DOT") has "issued

14  an Enforcement Notice clarifying, in the context of the 2019 Novel Coronavirus

15  (COVID-19) public health emergency, that U.S. and foreign airlines **remain**

16  **obligated to provide a prompt refund to passengers** for flights to, within, or from

17  the United States when the carrier cancels the passenger's scheduled flight or makes

18  a significant schedule change and the passenger chooses not to accept the alternative

19  offered by the carrier.  The obligation of airlines to provide refunds, including the

20  ticket price and any optional fee charged for services a passenger is unable to use,

21  does not cease when the flight disruptions are outside of the carrier's control (e.g., a

22  result of government restrictions)."[1]  Indeed, the DOT's Enforcement Notice makes

23  perfectly clear that offering "vouchers or credits for future travel" is not an adequate

24

25  _____

[1] DEP'T OF TRANSP., U.S DEPARTMENT OF TRANSPORTATION ISSUES ENFORCEMENT
26  NOTICE CLARIFYING AIR CARRIER REFUND REQUIREMENTS, GIVEN THE IMPACT OF
COVID-19 (Apr. 3, 2020), https://www.transportation.gov/briefing-room/us-
27  department-transportation-issues-enforcement-notice-clarifying-air-carrier-refund
(last accessed Apr. 10, 2020) (hereinafter "DOT NOTICE") (emphasis added).

28

or appropriate substitute for airlines' obligations to offer refunds for cancelled flights.[2]

4.     Norwegian focuses heavily on travel between the United States and Europe, and was the largest foreign airline in New York City in 2019, carrying over two million passengers.[3]  Norwegian's business was disrupted as a result of the recent travel ban between the United States and Europe.[4]

5.     Defendant Norwegian announced in March 2020 that it would ground 40 percent of its long-haul fleet and cancel up to 25 percent of its short-haul flights.[5]

6.     Plaintiff, like many other travelers, was scheduled to fly with Norwegian: on a departing flight from Los Angeles to Paris, and on a returning flight from Berlin to Los Angeles.

7.     Plaintiff's flight to Paris was cancelled by Norwegian due to the coronavirus travel ban.

8.     Norwegian claims that passengers affected by Coronavirus cancellations "can request a refund of your unused ticket, or choose CashPoints and get an extra 20% that can be used for your next trip."[6]

9.     Plaintiff requested a refund from Norwegian, which never came.

10.     Norwegian's acts are in violation of the DOT's Enforcement Notice, which requires airlines to provide "a prompt refund to passengers . . . when their

---

[2] *See id*.

[3] Michael Goldstein, *Norwegian Airlines Cuts 4000 Flights Due to Coronavirus, European Travel Ban*, FORBES, Mar. 12, 2020, https://www.forbes.com/sites/michaelgoldstein/2020/03/12/norwegian-airlines-cuts-4000-flights-due-to-coronavirus-european-travel-ban/#726bda70305d (last accessed Apr. 10, 2020).

[4] *Id*.

[5] *Id*.

[6] COVID-19 UPDATES, NORWEGIAN, https://www.norwegian.com/us/flight-status/updates/ (last accessed Apr. 10, 2020).

carrier cancels the passenger's scheduled flight."[7]  The DOT Enforcement Notice applies to "U.S. and foreign airlines."[8]

11.    As of right now, Norwegian feigns that refunds are available to customers, when it in fact is only offering customers an opportunity to get *credit* for a future flight – *not refunds*.[9]  For instance, Norwegian has a section of its website dedicated to answering customers' questions (in question and answer format) regarding its policy with respect to cancelled flights due to COVID-19.  One of the "questions" states: **Can I claim a refund or CashPoints if my flight is cancelled?** The "answer" states, "If we have cancelled your flights and you don't want to travel, you can request a refund of your unused ticket, or choose CashPoints and get an extra 20% that can be used for your next trip."  Just below this answer, Norwegian provides a prominent link allowing customers to get travel credit.  Then, further down, in small print, Norwegian states that customers wanting a refund have to submit a claim – even though, as discussed herein, Norwegian is not currently providing refunds.  Further, if customers do not select the CashPoints option to get travel credit, Norwegian does not refund affected customers the price of their ticket even where Norwegian cancelled the flight.  Norwegian's default option, should a customer not reach out to Norwegian at all regarding a flight that Norwegian cancelled, is to pocket the price of the ticket and provide neither travel credits nor refunds.

12.    Just below the above question and answer, the next section is titled: **Options if you don't want to travel**.  This section purports to inform customers who *do not want to travel* on Norwegian in the future and, accordingly, do not want travel credits.  The first question in this section states: **Can I claim a refund or**

---

[7] DOT NOTICE

[8] *Id.*

[9] COVID-19 UPDATES, NORWEGIAN, https://www.norwegian.com/us/flight-status/updates/ (last accessed Apr. 10, 2020).

**CashPoints if I cancel my booking?**  The "answer" states: "In light of the travel restrictions due to COVID-19, we are we're [SIC] offering to convert your ticket to CashPoints if you choose to cancel you booking."  Just below this answer, Norwegian provides a prominent link for customers to opt to obtain travel credits ("CashPoints").  Norwegian is not, however, currently providing actual refunds – only travel credits in the form of CashPoints.

13.    As discussed above, Plaintiff booked her flight on Norwegian from Los Angeles to Paris (through Norwegian's website), and a returning flight from Berlin to Los Angeles (through Kiwi's website).  Given that Norwegian cancelled her flight from Los Angeles to Paris, Plaintiff requested a refund of the return flight from Berlin to L.A.X.  Neither Kiwi nor Norwegian has issued a refund of either flight – the flight from Los Angeles to Paris cancelled by Norwegian, or the flight from Berlin to Los Angeles that Plaintiff was forced to cancel.  To make matters worse, Norwegian charged Plaintiff a $30 per passenger cancellation fee on her return flight (Berlin to Los Angeles), and Kiwi charged Plaintiff a $20 per passenger cancellation fee for her return flight.  Plaintiff could not have possibly made her return flight, as Norwegian had already cancelled Plaintiff's flight from Los Angeles to Paris.  Further, Plaintiff could not have possibly made her return flight because, upon information and belief, Norwegian later itself cancelled the flight.  Still, even though the return flight from Berlin to Los Angeles was ultimately cancelled by the airline, neither Norwegian nor Kiwi has budged on their refusal to refund either the costs of the ticket or the cancellation fees.  The cost of the flight and associated cancellation fees should be refunded to Plaintiff in full.

14.    Reports show that, due to financial strains, Norwegian is incapable of meeting its obligation to provide its customers refunds even for flights that Norwegian cancelled.  While Norwegian is reportedly Europe's third-largest budget airline carrier, it does not keep a sufficient amount of cash on hand to provide

customers refunds for cancelled flights, as Norwegian's total liability for required refunds may be almost double the amount of money Norwegian has on hand.[10]

15.    Norwegian's consumers have excoriated Norwegian's refusal or failure to provide its customers refunds.  For instance, like Plaintiff, consumers on the website tripadvisor.com have stated:

April 9, 2020 Review:[11]

"**cancelled flight from LAX**"

"my wife and I should have flown home on 23 march from los angeles to london.  flight cancelled. no help from norwegian air .got home and have been waiting with a claim since then now april 9 so far nothing."



//
//
//
//
//
//

---

[10] *See* Emily Derrick, *These European Airlines Have the Most Cash to Refund Tickets*, SIMPLE FLYING, Apr. 7, 2020, https://simpleflying.com/eu-airline-ticket-refunds/ (last accessed April 10, 2020).

[11] NORWEGIAN REVIEWS, TRIPADVISOR, https://www.tripadvisor.com/Airline_Review-d8729125-Reviews-Norwegian (last accessed April 10, 2020)

April 4, 2020 Review:

**"NO REFUNDS!"**

"My flight was cancelled 3 wks. Ago and still no refund! Horrible! Do yourself a favor and never do business with this company.



March 2020 Review:

**"WORST AIRLINES And worst TRAVEL CANCELLATION POLICY"**

"Worst airlines will never fly again, worst customer service, because of covid I couldn't fly and they dint give me travel credit or refund, will never fly this airlines again."



March 2020 Review:

"**Awful Customer Service**"

We are scheduled to fly to Rome one month from today.  Our tickets were purchased in January before all of the virus madness and now the entire country of Italy is on lockdown.  I just waited over an hour for their customer service representative to tell me they will not issue a refund or waive a change fee because 'this is the risk of booking a flight.'  He also told me that 'in my opinion you are just trying to get your money back' even though we do not have a choice but to cancel the trip because the country is shut down and my work will not allow me to come back if I have traveled to a country as high risk as Italy."

●○○○○

**Awful Customer Service**

We are scheduled to fly to Rome one month from today. Our tickets were purchased in January before all of the virus madness and now the entire country of Italy is on lockdown. I just waited over an hour for their customer service representative to tell me they will not issue a refund or waive a change fee because "this is the risk of booking a flight". He also told me that "in my opinion you are just trying to get your money back" even though we do not have a choice but to cancel the trip because the country is shut down and my work will not allow me to come back if I have traveled to a country as high risk as Italy.

Read less ▲

//
//
//
//
//
//
//
//

1     <u>March 2020 Review</u>:

2     **"No Coro[n]avirus refund to Italy"**

3



4

5

6

7

8

9

10

11

12

13     March 2020 Review:

14     **"CORONAVIRUS SITUATION"**

15     "…They don't want to refund, they don't allow rescheduling…"

16



17

18

19

20

21

22

23

24

25

26

27

28

16.     Defendant Kiwi's conduct is, in some ways, even more reprehensible than Norwegian's.  Kiwi is not providing customers with full refunds even where the airlines offer refunds for cancelled flights due to the coronavirus, and, as discussed above, Kiwi has not provided Plaintiff with a refund for her cancelled flight.  Thus, even where airlines provide a refund, Kiwi pockets the money for the cancelled flight but then refuses to pass on the full amount of the refund to its customers. Numerous consumers have submitted complaints to the Better Business Bureau regarding Kiwi's failure to offer full refunds:[12]

April 5, 2020 Complaint:

"…They were given a refund from the airline but refuse to give me back my money…"

**Complaint Type:** Problems with Product/Service        **Status:** BBB unable to locate business

04/05/2020

Was supposed to fly to Chile on Match 23. Had layovers in Mexico City and Peru. The borders there were closed and airlines were unable to fly. They charged my credit card through their system but booked the flights with another credit card. They were given a refund from the airline but refuse to give me back my money. They told me my only options were to take f107 crudity on their website or pay them am additional fee to receive an unguaranteed amount. At the time of booking I was told my flights were fully guaranteed.

March 31, 2020 Complaint:

"Booked airfare and flight was cancelled with ryanair but booked with kiwi.com and they refused to give a full refund or credit like the airline is giving to [their] guest if they booked directly with them … They are charging to ask the airline for a full refund/credit which the airline is offering on their website but not Kiwi.com, they are only offering 18.00 store credit."

---

[12] https://www.bbb.org/us/wi/milwaukee/profile/not-elsewhere-classified/kiwi-scam-0694-1000027415/complaints (last accessed 4/10/2020).

March 29, 2020 Complaint:

"On March, 20, 2020, I purchased an airline ticket for travel with Thai Smile Airline through Kiwi.com, because of the pandemic the airline cancelled all international flights and told me I would get a refund but I would have to go thourhg Kiwi.com. But Kiwi.com [told] me I would have to pay 20 euros to get my money back even though I also purchased travel insurance. Kiwi.com is using this as a golden opportunity to rip people off.

On March , 20, 2020, I purchased an airline ticket for travel with Thai Smile Airline through Kiwi.com, because of the pandemic the airline cancelled all international flights and told me i would get a refund but i would have to go through Kiwi.com. But Kiwi.com tokd me i would have to pay 20 euros to get my money back even though i also purchased travel insurance. Kiwi.com is using this as a golden opportunity to rip people off.

March 23, 2020 Complaint:

"I was scheduled to fly NY- London on Saturday March 14, 2020 flying Norwegian Airlines with tickets bough from Kiwi.com. Due to the COVID-19 worldwide outbreak and our national government banning travel from Europe to all non US citizens days before my scheduled flight. I deemed that my travel was not important enough to risk my self and others with the spread of the virus and the unknown. With the ban made from our government even Norwegian airline changed their refund policy to give credit to all flights even those deemed non refundable. But due to lack of care for the outbreak and for customers safety Kiwi.com has refused to follow the steps of the airline and has refused to credit passengers. Stating that the tickets where non refundable which I understand on a normal case where I missed the flight or decided just not to travel. So my question now is with Kiwi.com seeing how this virus spreads is the health of us all not more important than catching a flight and risk spreading the virus even more. What makes Kiwi go above what is

recommended by our national government and world leaders that not even a refund can be made. I understand the ticket I purchased and on a normal day I would of enjoyed my trip to the UK but with this global pandemic that no one saw coming what is more important the health of us all or Kiwi following ridiculous rules."

17.     Plaintiff brings this action on behalf of herself and the Class for equitable relief and to recover damages and restitution for:  (i) violation of the California Consumers Legal Remedies Act, Cal Bus & Prof Code §1750, *et seq*. (injunctive relief only), (ii) violation of the California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq*., (iii) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq*., (iv) unjust enrichment, (v) conversion, and (vi) fraud.

### PARTIES

18.     Plaintiff Cherish Daversa-Evdyriadis is a citizen of the State of California and resides in Rialto, California.  On November 15, 2019, Plaintiff purchased a ticket from Norwegian for a March 19, 2020 flight from Los Angeles to Paris.  Plaintiff paid approximately $590.00 for this flight.  However, the flight was cancelled by Norwegian due to the coronavirus, COVID-19.  On March 13, 2020, Plaintiff called Norwegian to request a refund for her departing flight.  After not hearing a response for several days, Plaintiff filled out a request for a refund on Norwegian's website a week later.  To date, Plaintiff has not received a refund. Plaintiff also purchased a return trip on Norwegian through Defendant Kiwi's website scheduled for March 28, 2020 from Berlin to Los Angeles.  Plaintiff paid $556.00 for her return flight.  Because Plaintiff's departing flight to Europe was cancelled, there is no way that Plaintiff could have boarded her return flight from Berlin to Los Angeles.  Accordingly, she sought to cancel the return flight. However, no refund has been issued and Plaintiff was charged a $30 per passenger

cancellation fee by Norwegian for her return flight (Berlin to Los Angeles), and a $20 per passenger cancellation fee by Kiwi for her return flight. Upon information and belief, Norwegian later cancelled Plaintiff's flight.

19.   At the time that Plaintiff purchased her tickets, she understood that she would be entitled to a refund from Norwegian and/or Kiwi if her flight was cancelled. However, Plaintiff was deceived by Norwegian and Kiwi regarding her right to a refund. Had Plaintiff been aware or had Defendants disclosed that she would not be entitled to a refund for cancelled flights, she would not have booked through Norwegian or Kiwi, and would have used a different airline and/or booking company, one that would have refunded money for cancelled flights.

20.   Defendant Norwegian Air Shuttle ASA is a foreign entity domiciled in the European Union with a principle place of business at Oksenoyveien 10A, Fornebu, Norway N-1330. Defendant Norwegian conducts substantial business throughout the United States, and specifically in the state of California.

21.   Defendant Kiwi.com, Inc. d/b/a Kiwi.com USA, Inc. is a Delaware corporation with a principle place of business at Palachovo náměstí 4625 00 Brno, Czech Republic. Defendant Kiwi conducts substantial business throughout the United States, and specifically in the state of California. Defendant Kiwi operates a flight and travel booking website, through which customers can buy tickets for flights, including on Norwegian.

## JURISDICTION AND VENUE

22.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

23.     This Court has personal jurisdiction over this action because Defendants availed themselves of the privilege of doing business in this District such that it was reasonably foreseeable for Defendants to face litigation in this District, and Plaintiff's claims arose out of Defendants' contacts with this District.

24.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because it is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.  Further, pursuant to 28 U.S.C. § 1391(c)(3), "a defendant not resident in the United States may be sued in any judicial district."

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, on behalf of the following Norwegian Class:

> All persons in the United States who purchased tickets for travel on a Norwegian flight scheduled to operate to, from, or within the United States whose flights were cancelled or were subject to a significant schedule change and not refunded.

26.     Plaintiff also seeks to represent a subclass of all members of the Norwegian Class who purchased the relevant tickets within the state of California (the "California Norwegian Subclass").

27.     Plaintiff also seeks to represent the following Kiwi Class pursuant to Federal Rule of Civil Procedure 23:

> All persons in the United States who purchased tickets through Kiwi.com whose flights were cancelled or were subject to a significant schedule change and not refunded.

28.     Plaintiff also seeks to represent a subclass of all members of the Kiwi Class who purchased the relevant tickets within the state of California (the "California Kiwi Subclass").

29.     Collectively, the Norwegian Class and the Kiwi Class shall be referred to as the "Classes."

30.     Collectively, the California Norwegian Subclass and California Kiwi Subclass shall be referred to as the "California Subclasses" or "Subclasses."

31.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Classes and Subclasses may be expanded or narrowed by amendment to the complaint or narrowed at class certification.

32.     Specifically excluded from the Classes and Subclasses are Defendants, Defendants' officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or Defendants' officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

33.     **Numerosity.**  The members of the proposed Classes are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiff reasonably estimates that there are hundreds of thousands of individuals that are members of the proposed Classes, and tens of thousands of individuals that are members of the proposed Subclasses. Although the precise number of proposed members is unknown to Plaintiff, the true number of members of the Classes and Subclasses is known by Defendants.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third-party retailers and vendors.

34.     **Typicality.**  The claims of the representative Plaintiff are typical of the claims of the Classes and Subclasses in that the representative Plaintiff, like all members of the Classes, paid for a Norwegian flight that was cancelled, and did not receive a refund for the cancelled flight or for any consequential damages and cancelations caused by the original cancelled flight.  The representative Plaintiff, like

all members of the Classes and Subclasses, has been damaged by Defendants' misconduct in the very same way as the members of the Classes and Subclasses. Further, the factual bases of Defendants' misconduct are common to all members of the Classes and Subclasses and represent a common thread of misconduct resulting in injury to all members of the Classes and Subclasses.

35.     **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all members of the Classes and the Subclasses and predominate over any questions affecting only individual members of the Classes.  These common legal and factual questions include, but are not limited to, the following:

(a)     Whether Norwegian and Kiwi failed to refund purchasers of cancelled flights and the consequential damages caused thereby;

(b)     Whether Norwegian and Kiwi falsely represented that customers whose flights were cancelled would receive a cash refund for cancelled flights;

(c)     Whether Defendants violated California's consumer protection laws;

(d)     Whether Defendants are liable to Plaintiff and the Classes and Subclasses for unjust enrichment;

(e)     Whether Defendants unlawfully converted money from Plaintiff and members of the Classes and Subclasses; and

(f)     Whether Plaintiff and the Classes and Subclasses are entitled to damages, restitution, equitable, injunctive, compulsory, or other relief.

36.     **Adequacy of Representation.**  Plaintiff will fairly and adequately protect the interests of the Classes and Subclasses.  Plaintiff has retained counsel who are highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Classes and Subclasses. Plaintiff has no interests that are antagonistic to those of the Classes or Subclasses.

37.     **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other

CLASS ACTION COMPLAINT                                                           15

financial detriment suffered by members of the Classes and Subclasses is relatively small compared to the burden and expense of individual litigation of their claims against Defendants.  It would, thus, be virtually impossible for members of the Classes or Subclasses, on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, even if members of the Classes and Subclasses could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

38.   In the alternative, the Classes and Subclasses may also be certified because:

(a)   the prosecution of separate actions by individual members of the Classes or Subclasses would create a risk of inconsistent or varying adjudication with respect to individual members of the Classes or Subclasses that would establish incompatible standards of conduct for the Defendants;

(b)   the prosecution of separate actions by individual members of the Classes or Subclasses would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Classes or Subclasses not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)   Defendants have acted or refused to act on grounds generally applicable to the Classes and Subclasses as a whole, thereby making appropriate final

CLASS ACTION COMPLAINT                                          16

declaratory and/or injunctive relief with respect to the members of the Classes and Subclasses as a whole.

## **CAUSES OF ACTION**

### **FIRST COUNT**
**Violation of the California Consumers Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*) (Injunctive Relief Only)**

39.   Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

40.   Plaintiff brings this claim individually and on behalf of the California Subclasses.

41.   California's Consumers Legal Remedies Act ("CLRA"), Cal Civ. Code §1750, *et seq.*, prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).

42.   Plaintiff and members of the California Subclasses are "consumers" within the meaning of Cal. Civ. Code § 1761(d) because they purchased airline tickets from Norwegian or through Kiwi for personal, family or household purposes.

43.   Defendants are "persons" within the meaning of California Civil Code sections 1761(c) and 1770 and provided "services" within the meaning of sections 1761(b) and 1770.

44.   Plaintiff, the other members of the California Subclasses, and Defendants have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

45.   Defendants' acts and practices, as alleged in this complaint, violate the CLRA because they include unfair and deceptive acts and practices in connection with transactions.

CLASS ACTION COMPLAINT                                                              17

46.     As alleged more fully above, Defendants have violated the CLRA by falsely representing to Plaintiff and the other members of the California Subclasses that passengers would be entitled to a refund for cancelled flights when in fact no such refunds were paid.  Defendants also engaged in deceptive acts and practices by failing to refund return flights for flights cancelled by Norwegian, and by charging cancellation fees.

47.     These misrepresentations constitute "unfair or deceptive acts or practices" that are prohibited by the California Consumer Legal Remedies Act ("CLRA"). Cal. Civ. Code §§ 1770(a)(5); 1770 (a)(7); 1770(a)(9); 1770(a)(16).

48.     Further, Defendants concealed from and failed to disclose to Plaintiff and the Classes that they would not be refunded for cancelled flights and consequential damages resulting therefrom.

49.     Defendants had a duty to disclose to Plaintiff and members of the California Subclasses that it would not issue prompt cash refunds for cancelled flights because Defendants were in a superior position to know their internal policies and proceeding with the transaction without disclosing these terms to Plaintiff and members of the California Subclasses rendered the transaction inherently unfair.

50.     The facts concealed or not disclosed by Defendants to Plaintiff and members of the California Subclasses were material in that a reasonable consumer would have considered them important when deciding whether to purchase airline ticket from Defendants.

51.     Plaintiff and California Subclasses' members' reliance on these omissions was reasonable given Defendants' advertising and representations.

52.     Plaintiff and members of the California Subclasses did not know that Defendants were concealing or otherwise omitting material facts.

53.     As a direct and proximate result of Defendants' violations, Plaintiff and the California Subclasses are entitled to injunctive relief ensuring Defendants promptly issue refunds in accordance with the DOT Enforcement Notice.

54.     On April 10, 2020, prior to filing this action, a CLRA notice letter was sent to Defendants that complies in all respects with California Civil Code § 1782(a). Plaintiffs' counsel sent Defendants the letter via certified mail, return receipt requested, advising Defendants that they are in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiff's CLRA letter is attached hereto as **Exhibit A**.

## SECOND COUNT
### Violation of the California False Advertising Law
### (Cal. Bus. & Prof. Code § 17500, *et seq.*)

55.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

56.     Plaintiff brings this claim individually and on behalf of the California Subclasses.

57.     Cal. Bus. & Prof. Code §17500 (the "FAL") states: "It is unlawful for any … corporation … with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

58.     Defendants caused to be made or disseminated through the United States and California, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the

exercise of reasonable care should have been known to Defendants to be untrue and misleading to consumers, including and members of the California Subclasses.

59.     Specifically, as alleged more fully above, Defendants have falsely advertised that Plaintiff and members of the California Subclasses would be entitled to claim cash refunds for cancelled flights, when in fact those refunds are being withheld from Plaintiff and members of the California Subclasses.  These misrepresentations were material to Plaintiff and members of the California Subclasses, were likely to deceive a reasonable consumer, and actually deceived Plaintiff and members of the California Subclasses.

60.     As a direct and proximate result of Defendants' untrue and misleading advertisements, Plaintiff and the other members of the California Subclass have suffered injury in fact and have lost money or property as a result of Defendants' violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*

61.     In choosing to purchase airline tickets from Defendants, Plaintiff and members of the California Subclasses relied on Defendants' untrue and misleading advertisements with respect to cash refunds for cancelled flights.  Had Plaintiff and members of the California Subclasses known they would not be entitled to a cash refund for cancelled flights, they would not have purchased airline tickets from Defendants.

62.     The wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business.  Defendants' wrongful conduct is part of a course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

63.     Plaintiff and members of the California Subclasses seek injunctive relief, restitution, and such other relief as is available under the FAL.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## THIRD COUNT
### Violation of the California Unfair Competition Law
### (Cal. Bus. & Prof. Code §17200, et seq.)

64.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

65.     Plaintiff brings this claim individually and on behalf of the California Subclasses.

66.     California's Unfair Competition Law ("UCL"), California Business and Professions Code §17200, prohibits any "unlawful, unfair, or fraudulent business act or practices."

67.     Defendants are "persons" under Cal. Bus. & Prof. Code § 17201.

68.     In the course of its business, Defendants violated the UCL by engaging in unlawful, fraudulent, unfair and deceptive business acts and practices.  Defendants violated each prong of the UCL.

69.     Specifically, Defendants violated the fraudulent prong of the UCL by, *inter alia*, knowingly and intentionally misrepresenting and concealing from Plaintiff and members of the California Subclasses the fact that Defendants would not issue cash refunds for cancelled flights or consequential damages resulting therefrom.

70.     Defendants have violated the UCL's proscription against engaging in unlawful conduct as a result of:

      (a)    their violations of the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), (a)(9), and (a)(16) as alleged above;

      (b)    their violations of the FAL, Cal. Bus. & Prof. Code § 17500 *et seq.*, as alleged above; and

      (c)    their violations of the of the DOT Enforcement Notice, issued April 3, 2020, as alleged above.

71.     Defendants violated the unfair prong of the UCL because the acts and conduct alleged herein offend established public policy, and are immoral, unethical,

---

CLASS ACTION COMPLAINT                                                                                            21

unscrupulous, or substantially injurious, and the harm Defendants caused to consumers greatly outweighs any benefits associated with its practices.

72.     As more fully described above, Defendants' misleading conduct is likely to deceive reasonable consumers.  Indeed, Plaintiff and the other members of the California Subclasses were unquestionably deceived regarding the nature of the refund for cancelled airline tickets and consequential damages resulting therefrom, as Defendants failed to disclose the true nature of its refund policies.  Said acts are fraudulent business practices.

73.     Plaintiff and the other members of the California Subclasses suffered a substantial injury as a result of Defendants' conduct.  Specifically, Plaintiff and members of the California Subclasses would not have purchased airline tickets from Defendants absent Defendants' unlawful, fraudulent, and unfair representations.

74.     There is no benefit to consumers or competition from deceptively depriving consumers of cash refunds for cancelled flights and consequential damages resulting therefrom.

75.     Plaintiff and the other California Subclasses members had no way of reasonably knowing that Defendants would deprive them of a cash refund for cancelled flights, or for consequential damages resulting therefrom.  Thus, they could not have reasonably avoided the injury each of them suffered.

76.     Defendant acted knowingly, intentionally, and/or with reckless disregard for the rights of Plaintiff and members of the California Subclasses.  Defendants' fraudulent, unfair, and unlawful conduct continues to this day.

77.     Plaintiff and members of the California Subclasses seek declaratory, injunctive, and equitable relief, including restitution and/or disgorgement, and any other just and proper relief available under the UCL.

### FOURTH COUNT
**Unjust Enrichment**

78.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

79.     Plaintiff brings this claim on behalf of herself and members of the Classes and Subclasses.

80.     Plaintiff and the Classes and Subclasses conferred a benefit on Defendants in the form of monies paid to purchase airline tickets for flights that were later cancelled or subject to a significant schedule change by Norwegian.

81.     Defendants have knowledge of these benefits.

82.     Defendants voluntarily accepted and retained this benefit.  Defendants voluntarily retained the benefit of the purchase price of the tickets in addition to consequential damages resulting from the cancelation (such as the customer having to cancel the return flight).

83.     Because this benefit was obtained unlawfully, namely by selling airline tickets for flights that were later cancelled by Norwegian, it would be unjust and inequitable for the Defendants to retain it without paying the value thereof.

### FIFTH COUNT
**Conversion**

84.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

85.     Plaintiff brings this claim individually and on behalf of the members of the Classes and Subclasses against Defendants.

86.     Plaintiff and members of the Classes and Subclasses have an ownership right to the monies paid for the tickets for cancelled flights sold by Defendants, as well as for the consequential damages resulting therefrom.

87.     Defendants have wrongly asserted dominion over the payments illegally diverted to them for the cancelled flights, and consequential damages resulting

therefrom.  Defendants have done so every time that Plaintiff and members of the Classes and Subclasses paid to purchase a ticket for a flight that was later cancelled or subject to a significant schedule change by Norwegian.

88.    As a direct and proximate cause of Defendants' conversion, Plaintiff and members of the Classes and Subclasses suffered damages in the amount of the payments made for each time they purchased a ticket for a flight that was cancelled or subject to a significant schedule change by Norwegian, and in the amount of consequential damages resulting therefrom.

## SIXTH COUNT
### Fraud

89.    Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

90.    Plaintiff brings this claim on behalf of herself and members of the Classes and Subclasses.

91.    As discussed above, Defendants falsely misrepresented that costs paid for cancelled flights would be refunded.  Despite these representations, Defendants failed to refund moneys paid by Plaintiff and members of the Classes and Subclasses.

92.    Defendants knew they would not reimburse customers for cancelled flights, but nevertheless continued to make knowingly false representations about refunds.  In short, the false and misleading representations and omissions were made with knowledge of their falsehood.

93.    The false and misleading representations and omissions were made by Defendants, upon which Plaintiff and members of the Classes and Subclasses reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and members of the Classes and Subclasses to purchase airline tickets from Defendants.

94.    The fraudulent actions of Defendants caused damage to Plaintiff and members of the Classes and Subclasses, who are entitled to damages and other legal and equitable relief as a result.

95.    As a result of Defendants' willful and malicious conduct, punitive damages are warranted.

### SEVENTH COUNT
**Breach of Contract**

96.    Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

97.    Plaintiff brings this claim on behalf of herself and members of the Classes and Subclasses.

98.    Defendants entered into contracts with Plaintiff and members of the Classes to provide services in the form of flights in exchange for a set amount of money.  Defendants have breached these contracts by retaining Plaintiff and Class members' ticket prices while not providing flight services.  Plaintiff and members of the Classes have suffered an injury through the payment of money for tickets while not receiving services in return.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests, individually and on behalf of the alleged Classes and Subclasses, that the Court enter judgment in their favor and against Defendants as follows:

(a)    An Order certifying the proposed Classes and Subclasses and appointing Plaintiff and her Counsel to represent the Classes and Subclasses;

(b)    An Order requiring Defendants to immediately issue refunds to Plaintiff and members of the Classes and Subclasses for the cost of cancelled

1    tickets, any cancellation fees, and consequential damages resulting
2    therefrom;

3    (c)   An Order of disgorgement of wrongfully obtained profits;

4    (d)   An award of compensatory, statutory, and punitive damages, in an
5          amount to be determined;

6    (e)   An award of reasonable attorneys' fees costs and litigation expenses, as
7          allowable by law;

8    (f)   Interest on all amounts awarded, as allowed by law; and

9    (g)   Such other and further relief as this Court may deem just and proper.

10   ## DEMAND FOR JURY TRIAL

11   Plaintiff demands a trial by jury on all issues so triable.

12

13   Dated:  April 13, 2020                  Respectfully Submitted,

14                                           **BURSOR & FISHER, P.A.**

15

16   By:   */s/ Yeremey Krivoshey*
                  Yeremey Krivoshey

17   L. Timothy Fisher (State Bar No. 191626)
18   Yeremey Krivoshey (State Bar No. 295032)
     1990 North California Blvd., Suite 940
19   Walnut Creek, CA 94596
     Telephone: (925) 300-4455
20   Facsimile: (925) 407-2700
21   E-Mail: ltfisher@bursor.com
                  ykrivoshey@bursor.com
22

23   *Attorneys for Plaintiff*

24

25

26

27

28

CLASS ACTION COMPLAINT                                                  26

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Yeremey Krivoshey, declare as follows:

     1.     I am an attorney at law licensed to practice in the State of California and I am member of the bar of this Court.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff in this action. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

     2.     The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in this District.

     3.     I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Richmond, California this 13th day of April, 2020.

                                          */s/ Yeremey Krivoshey*
                                          Yeremey Krivoshey