JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | EDCV 20-767-JGB(SPx) | Date | September 17, 2020 |
| Title | *Cherish Daversa-Evdyriadis v. Norwegian Air Shuttle ASA* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**    Order (1) GRANTING Defendant's Motion to Dismiss the First Amended Complaint (Dkt. No. 27) (IN CHAMBERS)

Before the Court is Norwegian Air Shuttle ASA's ("Norwegian" or "Defendant") motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  ("MTD," Dkt. No. 27.)  The Court determines the Motion is appropriate for resolution without a hearing.  See Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support of and in opposition to the Motion, the Court GRANTS the Motion.

## I.    BACKGROUND

On April 13, 2020, Plaintiff Cherish Daversa-Evdyriadis ("Plaintiff") filed a class action complaint against Norwegian and Kiwi.com, Inc. ("Kiwi").  ("Complaint," Dkt. No. 1.)  In the Complaint, Plaintiff alleged various claims arising out of Norwegian and Kiwi's alleged failure to refund Plaintiff for a flight canceled due to the COVID-19 pandemic.  (Id.)  On June 11, 2020, Plaintiff amended the Complaint.  ("FAC," Dkt. No. 24.)[1]  In the FAC, Plaintiff alleges one cause of action for breach of contract.  (Id.)

---

[1] On the same day Plaintiff filed the FAC, she filed a notice of dismissal dismissing Kiwi as a party to this matter.  (Dkt. No. 23.)

(continued . . .)

On July 15, 2020, Defendant filed the Motion.  (See Motion.)  In support of the Motion, Defendant filed a request for judicial notice.  ("RJN," Dkt. No. 28.)[2]  On July 27, 2020, Plaintiff opposed the Motion.  ("Opposition," Dkt. No. 29.)  On August 3, 2020, Defendant replied.  ("Reply," Dkt. No. 30.)

## II.   LEGAL STANDARD

### A. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Horosny v. Burlington Coat Factory, Inc., 2015 WL 12532178, at *3 (C.D. Cal. Oct. 26, 2015).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint — as well as any reasonable inferences to be drawn from them — as true and construe them in the light most favorable to the non-moving party.  See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between

---

[2] Defendant requests judicial notice of the U.S. Department of Transportation's ("DOT") frequently asked questions webpage regarding airline ticket refunds during the COVID-19 public health emergency.  (See RJN.)  Courts may properly take "judicial notice of '[p]ublic records and government documents available from reliable sources on the Internet,' such as websites run by governmental agencies."  Gerritsen v. Warner Bros. Entm't Inc., 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) (quoting Hanson Beverage Co. v. Innovation Ventures, LLC, 2009 WL 6597891, *1 (S.D. Cal. Dec. 23, 2009)).  The Court thus GRANTS the RJN and takes judicial notice of the DOT's frequently asked questions webpage.

possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

### B. Leave to Amend

Federal Rule of Civil Procedure 15 provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit holds "'[t]his policy is to be applied with extreme liberality.'" Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). However, leave to amend is not automatic. If a Rule 12(b)(6) motion is granted, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted).

### III. DISCUSSION

Defendant moves the Court to dismiss the sole claim in the FAC for breach of contract. (See Motion.) Defendant contends that although Plaintiff's flight was canceled, she received a refund for her flight on April 16, 2020. (Id. at 17.) Defendant argues that Plaintiff fails to plausibly allege a breach of contract because the terms of the operative contract — the General Conditions of Carriage ("GCC") — entitle Plaintiff to a refund for canceled flights, but do not specify a timetable for the refund. (Id.) In response, Plaintiff contends that the GCC affirmatively obligates Defendant to abide by all relevant law, effectively incorporating DOT regulations as implied terms of the contract. (Opposition at 15.) Plaintiff points out that relevant DOT regulations impose a seven-day deadline for airlines to process refunds, and that Defendant breached the GCC by failing to timely refund her in accordance with federal regulations. (Id.) For reasons described below, the Court agrees with Defendant and finds that Plaintiff fails to plausibly allege a breach of contract claim.

### A. Contractual Incorporation of DOT Regulations

Plaintiff alleges one claim for breach of contract. (See FAC.) To state a claim for breach of contract, "a plaintiff must plead… (1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff." Walsh v. W. Valley Mission Cmty. Coll. Dist., 66 Cal. App. 4th 1532, 1545 (1998). The parties limit their dispute to whether Defendant breached its contract with Plaintiff.

Plaintiff alleges that Defendant breached the GCC because it issued a refund to Plaintiff on April 16, 2020, several weeks after cancellation of her flight due to a COVID-19 travel ban. (FAC ¶ 20.) Plaintiff alleges that Defendant's delay violated relevant DOT regulations that require a refund within seven days of flight cancellation. (Id.); see also 14 C.F.R. § 259.5(b)(5) (requiring airlines to provide "prompt" refunds for cancelled flights, including twenty days for cash and check purchases and imposing the timeline required by 12 C.F.R. § 226.12 for credit card purchases); 12 C.F.R. § 226.12(e)(1) (requiring credit card purchases to be refunded by creditors within seven days).

The GCC guaranteed that if Defendant "d[id] not succeed in carrying [Plaintiff], [it] w[ould] refund [her] Ticket[.]" (FAC at 37.) While the GCC does not explicitly guarantee refunds for cancelled flights within a certain period of time, Plaintiff points to language in the GCC that states that Defendant "compl[ies] with all applicable laws, verdicts, conventions and regulations." (FAC at 18.) Plaintiff cites other language in the GCC under a section titled, "[m]andatory statutory provisions," which explains that:

> "[Defendant is] subject to national and international Conventions and regulations when transporting [its] customers. [The] General Conditions of Carriage will apply insofar as they do not conflict with applicable Tariffs or Conventions. In those cases where an inconsistency exists between [Defendant's] General Conditions of Carriage and applicable Tariffs and Conventions, the Tariffs and/or Conventions will always take precedence over [the] General Conditions of Carriage."

(Id. at 22.) According to Plaintiff, the above language effectively incorporates DOT regulations into the GCC, contractually obligating Defendant to refund cancelled flights within seven days. (FAC ¶ 20.) Plaintiff asserts that Defendant breached the GCC because it delayed three weeks before refunding Plaintiff for her cancelled flight, well beyond the seven-day deadline. (Id.)

The Court disagrees. Multiple federal courts have addressed whether similar language in airfare contracts incorporates federal regulations; nearly all have answered the question in the negative. For example, Judge Haywood Gilliam rejected an almost identical contention by the plaintiffs in Shrem v. Sw. Airlines Co., 2016 WL 4170462, at *4 (N.D. Cal. Aug. 8, 2016). In Shrem, plaintiffs argued that the operative contract with Southwest Airlines incorporated relevant disclosure laws because of language stating that the contract was "subject to applicable laws, regulations and rules imposed by [the] U.S." Id. (emphasis removed). Judge Gilliam rejected that contention, explaining that the contract "d[id] not *incorporate* all the applicable laws, regulations and rules imposed by the U.S." but instead simply stated that the contract was "*subject to* applicable laws, regulations and rules imposed by [the] U.S." Id. (emphasis in original).

Likewise, the court in Polinovsky v. British Airways, PLC, 2012 WL 1506052, at *3 (N.D. Ill. Mar. 30, 2012) surveyed similar cases and found that the dispositive factor was often whether the regulation at issue "was [] explicitly incorporated into the contract." Polinovsky, 2012 WL 1506052, at *2 (internal quotations omitted) (citing Giannopoulos v. Iberia Lineas Aereas de Espana, S.A., 2011 WL 3166159, at *3 (N.D. Ill. July 27, 2011)). For that reason,

Polinovsky found that language in British Airways' airfare contract that promised passengers with "additional assistance, such as compensation… if required to do so by any law which may apply[]" was too generalized and non-specific to incorporate a European Union regulation mandating refunds for cancelled flights.  (Id. (internal quotations omitted).)

While neither Circuit addressed the issue at length, both the Fifth and First Circuits have concurred with the district courts in Polinovsky and Shrem.  In Onoh v. Nw. Airlines, Inc., 613 F.3d 596 (5th Cir. 2010), the Fifth Circuit rejected the idea that "the simple references to the need to comply with all applicable law addressed in [] limited portions of the contract" incorporated international law.  Onoh, 613 F.3d at 601.  The First Circuit similarly denounced contractual incorporation of federal regulations premised on boilerplate compliance language as "untenable."  Buck v. Am. Airlines, Inc., 476 F.3d 29, 37 (1st Cir. 2007).  In Buck, the First Circuit noted that DOT regulations did not give rise to a private right of action, and went on to explain its rationale that:

> "[C]onstruing all federal regulations touching upon air travel as automatically incorporated into every airline's contracts of carriage would allow litigants freely to skirt the implied right of action doctrine.  There is nothing to distinguish the regulation at issue here from the mine-run of federal regulations touching upon air travel, and we will not countenance the flagrant undermining of Supreme Court doctrine that the plaintiffs invite."

Buck, 476 F.3d at 37.

The Court agrees with the vast majority of its sister courts and holds that boilerplate contractual language guaranteeing compliance with international or domestic aviation laws does not incorporate extraneous law into the terms of an airfare contract.  Instead, only language explicit enough to reflect an intent to be affirmatively bound by a specific aviation law or regulation is sufficient to result in incorporation.  While determining whether airfare contract terms are sufficiently specific to trigger regulatory incorporation will require case-by-case adjudication, the general limits established by the cases above are relatively clear.  For example, an airfare contract that identifies an exact regulation or statute and guarantees compliance with it will generally be sufficient to infer an intent to incorporate extraneous law.  In contrast, an airfare contract that broadly vows to abide by all applicable laws would not suggest the same inference.  See Giannopoulos, 2011 WL 3166159, at *3 (incorporating European Union regulation into airfare contract because "[u]nlike generic references to 'applicable law' or arguments that certain federal regulations are implicitly part of every contract, in this case, [Defendant] specifically refers to complying with [the incorporated regulation] in its conditions of contract.").  Likewise, limited contractual language that fails to impose an affirmative obligation to ensure compliance with aviation law — and instead merely acknowledges a passive and redundant subservience to applicable law — would generally not warrant incorporation.  Onoh, 613 F.3d at 601 (holding that "simple references to the need to comply with all applicable law addressed in [] limited portions of the contract" did not warrant incorporation of applicable law); Shrem, 2016 WL 4170462, at *4 (rejecting incorporation of

applicable law because contract merely stated that it was "*subject to* applicable laws, regulations and rules imposed by [the] U.S.") (emphasis added).³

Requiring that airline contract language specifically incorporate extraneous law reflects three important principles: first, air travel is a carefully regulated field preempted by federal law.  See Buck, 476 F.3d at 37.  As explained in greater detail below, federal law is a significant obstacle that frequently limits a plaintiff's ability to bring state law causes of action against airlines.  While a limited exception exists for causes of action for breach of contract, an expansive view of incorporation of federal regulations would permit hundreds of thousands of airline passengers across the country to undermine Congress's legislative scheme and privately enforce regulations otherwise reserved for the DOT.  Second, and relatedly, expansive private enforcement of DOT regulations would "countenance the flagrant undermining of Supreme Court doctrine" regarding implied rights of action, id., a field of law that the Supreme Court has frequently sought to limit in scope over the years.  Finally, "[u]nder California law, the fundamental goal of contract interpretation is to give effect to the mutual intent of the parties[.]"  U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc., 281 F.3d 929, 934 (9th Cir. 2002).  The Court struggles to believe — and Plaintiff makes no effort to convince it otherwise — that any airline would intend to grant all passengers purchasing a ticket a private right of action to enforce "all applicable laws, verdicts, conventions and regulations." (FAC at 18 (emphasis added).)  It is difficult to fathom why airlines across the country would intend to casually expose

---

³ In response, Plaintiff points to two cases incorporating statutes into an airfare contract based on the language of the contract.  One case is distinguishable, the other inapposite.  The first case, In re Am. Airlines, Inc., Privacy Litig., 370 F. Supp. 2d 552 (N.D. Tex. 2005), involved a contract of carriage that, in contrast to the GCC, allegedly contained detailed, comprehensive, and specific policies relating to passenger privacy protections, including a guarantee that "[passenger] personal information [was] maintained under strict physical, electronic, and procedural safeguards that comply with federal regulations… and that [the airline] participates in the Council of Better Business Bureaus' online privacy program and complies with its privacy and security standards."  In re Am. Airlines, 370 F. Supp. 2d at 556.  The contract further detailed "the limitations [the airline] observe[d] in disclosing or sharing customer information and represent[ed] that information security [was] one of its highest priorities."  Id.  Judge Sidney Fitzwater went on to hold that such language was sufficient to expressly incorporate federal privacy laws into the contract of carriage.  Id. at 566.  Clearly, however, the contract of carriage in In re Am. Airlines placed greater emphasis and importance on privacy protections, and took time to identify discrete fields of federal privacy regulations — a level of specificity and detail not reflected by the GCC.

The second case, McMullen v. Delta Air Lines, Inc., 2008 WL 4449587, at *4 (N.D. Cal. Sept. 30, 2008), had no need to decide whether the foreign statute at issue was incorporated into the contract of carriage.  Instead, McMullen rejected plaintiff's arguments because "none of Delta's actions in collecting [fees] are contrary to any terms of the [cited extraneous regulation]."  Id.  Thus, McMullen is entirely inapposite.

themselves to potentially crippling liability; the most rational explanation countenances that they lacked any such intent at all.

Applying the law to the GCC and Plaintiff's allegations, the language cited by Plaintiff is far too generalized and non-specific to incorporate the identified DOT regulations. For instance, the GCC broadly states that Defendant is "subject to national and international Conventions and regulations when transporting [its] customers." (FAC at 22.) A redundant and passive proclamation that an airline is "subject to" applicable law is identical to the language found insufficient to warrant incorporation in Shrem. Shrem, 2016 WL 4170462, at *4. Likewise, the affirmation that Defendant will "comply with all applicable laws, verdicts, conventions and regulations[,]" (FAC at 18), is too vague and non-specific to trigger incorporation of extraneous regulations because it fails to specify a precise regulation or even an identifiable field of regulations. Giannopoulos, 2011 WL 3166159, at *3.

The language of the GCC does not reflect an intent to incorporate DOT regulations into its terms. As a result, the terms of the operative contract do not require Defendant to refund Plaintiff within seven days. The Court therefore GRANTS the Motion and DISMISSES Plaintiff's breach of contract claim to the extent it alleges a theory of regulatory incorporation.

**B.   Breach of Express Terms**

Plaintiff, perhaps sensing that the GCC does not explicitly incorporate the relevant DOT regulations, posits two alternative breach of contract theories: (1) that Defendant breached a contractual "duty to carry customers" by cancelling her flight (Opposition at 18); and (2) that Defendant breached a statutorily imposed "duty to refund[]" by failing to refund her in a reasonable amount of time (Opposition at 21). Neither theory has merit.

As to the first theory, Plaintiff is correct that the GCC contracted with Plaintiff and other passengers to provide carriage. However, Plaintiff alleges that her flight cancellation was "due to the coronavirus travel ban[]" imposed "between the United States and Europe[]" in March of 2020. (FAC ¶¶ 5, 9.) "'[W]here, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged[.]'" Maudlin v. Pac. Decision Scis. Corp., 137 Cal. App. 4th 1001, 1017 (2006) (quoting Restatement (Second) of Contracts § 261 (1981)). "The Restatement Second of Contracts section 264 governs impracticability of performance where prevented by governmental regulation or order[.]" G. W. Andersen Constr. Co. v. Mars Sales, 164 Cal. App. 3d 326, 338 (1985). In turn, section 264 states that "'[i]f [] performance of a duty is made impracticable by having to comply with a domestic… governmental regulation or order, that regulation or order is an event the nonoccurrence of which was a basic assumption on which the contract was made.'" M & I Bank, FSB v. Coughlin, 2011 WL 5445416, at *7 (D. Ariz. Nov. 10, 2011) (quoting Restatement (Second) of Contracts § 264 (1981)). Thus, Defendant's contractual obligation to provide carriage for plaintiff and other passengers was discharged because performance was rendered impracticable by the travel ban.

As to the second theory, Plaintiff asserts that California Civil Code section 1657 required Defendant to provide her a refund in a "reasonable [amount of] time[.]"[4] (Opposition at 21.) But Plaintiff cannot rely on state law extraneous to a binding agreement to state a viable breach of contract claim: the Airline Deregulation Act ("ADA") preempts state regulations creating obligations related to airline fares, routes, and services. 49 U.S.C. § 41713(b)(1); see also Hickcox-Huffman v. US Airways, Inc., 855 F.3d 1057, 1062 (9th Cir. 2017) ("The States may not impose their own rules regarding [airline] fares, routes, or services[.]"). Instead, only private obligations explicitly agreed to under general principles of contract law can give rise to a valid breach of contract claim related to airline fares. Am. Airlines, Inc. v. Wolens, 513 U.S. 219, 228, (1995). Consequently, to plausibly allege a breach of contract claim relating to an airline fare, the alleged contract must not be "'enlarge[d] or enhance[d]… based on state laws or policies external to the agreement.'" Alatortev v. JetBlue Airways, Inc., 2018 WL 784434, at *4 (N.D. Cal. Feb. 7, 2018) (citing Onoh, 613 F.3d at 600).

Here, Plaintiff's reliance on section 1657 clearly serves to "enlarge[] or enhance[]" the GCC "based on state laws or policies external to the agreement." Id. (internal quotations omitted). The GCC's refund provision contains no terms requiring Defendant to refund passengers within a certain period of time; Plaintiff cannot add such a term to the agreement through state law or policy because the ADA preempts her attempts to do so. Accordingly, Plaintiff's alternative theories of liability both fail to state a claim. The Court thus GRANTS the Motion and DISMISSES the FAC.

### C. Potential Rescission Claim

In the alternative, Plaintiff requests that the Court grant her leave to amend the FAC to add a rescission claim in place of her breach of contract claim. (Opposition at 23.) However, for the reasons described in Part III.B, any such claim would be preempted by the ADA. The Court thus DENIES Plaintiff leave to amend because amendment would not remedy the deficiencies in the FAC.

### IV.   CONCLUSION

For the reasons described above, the Court GRANTS the Motion and DISMISSES the FAC WITHOUT LEAVE TO AMEND. The Clerk is directed to close the case.

**IT IS SO ORDERED.**

---

[4] Section 1657 provides in full: "[i]f no time is specified for the performance of an act required to be performed, a reasonable time is allowed. If the act is in its nature capable of being done instantly — as, for example, if it consists in the payment of money only — it must be performed immediately upon the thing to be done being exactly ascertained." Cal. Civ. Code § 1657.